# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD J. LAWLESS, | ) | Case No. 5:21-cv-01938 |
| | ) | |
| Petitioner, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Amanda M. Knapp |
| LEON HILL, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## OPINION AND ORDER

A jury in State court found Petitioner Richard J. Lawless guilty of two counts of kidnapping, one count of felonious assault, and two counts of abduction, for which he received a sentence of seventeen years in prison.  After unsuccessfully pursuing appeals and post-conviction relief, Mr. Lawless filed a petition for a writ of habeas corpus, alleging a violation of the Sixth Amendment's Confrontation Clause, ineffective assistance of counsel, prosecutorial misconduct, and witness intimidation. The Magistrate Judge recommends that the Court dismiss the petition as untimely, and Petitioner objects.  For the reasons that follow, the Court **OVERRULES** Petitioner's objections, **ADOPTS** the Magistrate Judge's report and recommendation, and **DENIES AND DISMISSES** the petition.  Further, the Court **DENIES** a certificate of appealability.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 5, 2016, a grand jury charged Mr. Lawless with one count of felonious assault, two counts of kidnapping, and two counts of abduction. (ECF No. 6-1, PageID

#111.) A jury found Mr. Lawless guilty on all counts. (*Id*.) For purposes of sentencing, the trial court merged the abduction and kidnapping offenses. (*Id*.)

### A.    Trial

At trial, the evidence showed that Mr. Lawless threatened and assaulted two recovering heroin addicts, Sara Donohue and Raymond Krupansky, whom he regularly supplied with drugs. (*Id*., PageID #185; ECF No. 6-2, PageID #749.) Two days earlier, local law enforcement executed search warrants on several properties that Mr. Lawless owned, including a property which was occupied by the mother of Raymond Krupansky who lived there as a tenant. (ECF No. 6-2, PageID #752–54.) Mr. Lawless suspected that the victims, Sara Donohue and Raymond Krupansky, snitched on him. (*Id*., PageID #752–59.)

Following the execution of the search warrants, Mr. Lawless, with the help of Michael Kouns, ambushed Sara Donohue and Raymond Krupansky at a vacant unit in a building that he owned. (ECF No. 6-1, PageID #186; ECF No. 6-2, PageID #756–58.) Mr. Lawless threatened Donohue and Krupansky at gunpoint and Kouns duct taped Krupansky at the direction of Mr. Lawless. (ECF No. 6-2, PageID #759–62.) Also, Mr. Lawless physically assaulted Krupansky with a bat, striking him several times. (ECF No. 6-1, PageID #186; ECF No. 6-2, PageID #762.) Mr. Lawless threatened the victims, saying he planned to torture and kill them. (ECF No. 6-2, PageID #759.) Despite initial reluctance, both Donohue and Krupansky reported the assault to law enforcement about a week later. (ECF No. 6-1, PageID #186; ECF No. 6-2, PageID #786-87.) Initially, Kouns was indicted as a co-defendant and faced the same charges as Mr. Lawless. Later, Kouns pled guilty to felonious assault on

the condition that the other charges against him were dismissed. (ECF No. 6-2, PageID #732.) Kouns received a two-year sentence. (*Id*.)

At trial, Mr. Kouns testified, admitting his fear of a potential lengthy sentence and acknowledging his involvement in another criminal case in Ashland County. (*Id*., PageID #720 & #733.) Despite defense counsel's attempt to delve into the specifics of Kouns's plea deal, the State trial court attempted to restrict the line of questioning, emphasizing that Kouns had not yet been convicted and could potentially withdraw his plea. (*Id*., PageID #734.) Accordingly, defense counsel was unable to ask specific questions about Kouns's other pending case. (*Id*., PageID #734–36.) Defense counsel made a proffer. (*Id*., PageID #735.) However, the State trial court barred further questioning on the matter, relying on the prosecution's explanation that there was no deal offered and that the jury could draw an improper inference that there was. (*Id*., PageID #735–36.)

## B.    Direct Appeal

On May 5, 2016, Mr. Lawless appealed and raised three assignments of error: (1) he was unduly restricted in his right to cross examine a key witness in violation of the Confrontation Clause; (2) trial counsel was ineffective; and (3) the jury's verdict was against the manifest weight of the evidence. (ECF No. 6-1, PageID #118.) On February 7, 2018, the State appellate court overruled each of these assignments of error and affirmed Petitioner's conviction. (*Id*., PageID #185.) Raising his issues regarding the Confrontation Clause and ineffective assistance of trial counsel, Mr. Lawless sought discretionary review at the Ohio Supreme Court. (*Id*., PageID

#214.)  On May 23, 2018, the Ohio Supreme Court declined review.  (*Id.*, PageID #230.)

### C.    Petition for Post-Conviction Relief

On July 13, 2017, Mr. Lawless filed a *pro se* petition for post-conviction relief.  (*Id.*, PageID #231.)  He raised sixteen grounds for relief.  (*Id.*, PageID #231–68.)  Additionally, Mr. Lawless moved for an evidentiary hearing.  (*Id.*, PageID #269.)

The State moved to dismiss the petition and presented two affidavits:  one from Olivia Boyer, the prosecutor who tried the case, and another from pharmaceutical investigator J. Tadd Davis, who was employed with the Medina County Drug Task Force during the time of Mr. Lawless's investigation.  (*Id.*, PageID #274 & #283–87.)  In Boyer's affidavit, she swore that, when discussing Kouns's Ashland County case with him, "no offers or guarantees" were made for his pending case in light of his testimony against Mr. Lawless, and she claimed that she never "threaten[ed] or coerce[d] any witness."  (*Id.*, PageID #283.)  At trial, Davis testified that "Sara Donahue did not receive a plea deal in Ashland County in exchange for her testimony at the Richard Lawless trial."  (*Id.*, ¶, 5, PageID #286.)  In his affidavit, Davis attested that she was not charged in Ashland County "in regards to any involvement with Richard Lawless."  (*Id.*)  On September 20, 2017, the State trial court granted the motion to dismiss and denied Mr. Lawless' petition.  (*Id.*, PageID #302.)

On November 15, 2017, Mr. Lawless sought reconsideration.  (*Id.*, PageID #303.)  On November 28, 2017, the State trial court denied the motion, finding that

there were "no credible substantive grounds for relief" and that Mr. Lawless had not demonstrated prejudice entitling him to relief. (*Id.*, PageID #305 & #311.)

On December 26, 2017, Mr. Lawless filed a notice of appeal. (*Id.*, PageID #312.) Through counsel, Mr. Lawless challenged the State's failure to provide details of incentives provided to witnesses to testify and the failure of the State trial court to hold an evidentiary hearing to test the affidavits. (*Id.*, PageID #317.) On August 1, 2018, the State appellate court overruled the assignments of error and affirmed denial of the post-conviction petition. (*Id.*, PageID #373.) Regarding the first assignment of error relating to the incentives for witnesses to testify against Mr. Lawless, the State appellate court declined to address the merits. (*Id.*, PageID #374.) It did so because it found that Mr. Lawless's post-conviction petition was untimely. (*Id.*, PageID #375.) Specifically, at the time, the statute required filing a post-conviction petition within one year of the filing of the transcripts in the appellate court on direct appeal, which happened on June 30, 2016. (*Id.*) Mr. Lawless did not file his post-conviction petition until July 13, 2017. (*Id.*, *see also id.*, PageID #231.) As for the second issue, the State appellate court declined to address the need for a hearing because of the untimeliness of his petition. (*Id.*, PageID #375.)

On September 11, 2018, Mr. Lawless filed a *pro se* notice of appeal to the Ohio Supreme Court. (*Id.*, PageID #377.) In his memorandum in support of jurisdiction, he raised the same two assignments of error. (*Id.*, PageID #385.) In addition, he raised the following question: "Should a Defendant be time barred from filing Post Conviction when the prosecution discloses evidence it withheld for over one year after

transcription of the proceedings?"  (*Id.*, PageID #385.)  To support this last assignment of error, Mr. Lawless argues that his post-conviction petition presented newly discovered evidence because the alleged *Brady* violations became a part of the record only after the expiration of the one-year statute of limitations had run.  (*Id.*, PageID #395.)  Also, he argued that the State failed to provide him with transcripts and the requested "court docket that contained the crucial start date in which the time tolling began to file post conviction [motions]."  (*Id.*, PageID #395.)  On November 21, 2018, the Ohio Supreme Court declined review.  (*Id.*, PageID #405.)

### D.    Second Post-Conviction Petition

On November 14, 2019, Mr. Lawless filed a second post-conviction petition for a new trial, requested an evidentiary hearing, and moved for appointment of counsel.  (*Id.*, PageID #406, #462, & #465.)  Mr. Lawless relied on two pieces of newly discovered evidence:  (1) the prosecutor's affidavit referencing alleged *Brady* violations was not filed until September 5, 2017, and (2) an affidavit from Kouns filed on October 18, 2019. (*Id.*, PageID #407.)  In this petition, Mr. Lawless raised five grounds for relief:  (1) the State's failure to provide details of witnesses' incentive to testify against him; (2) violation of the Confrontation Clause when the State trial court precluded defense counsel from questioning a State witness; (3) reliance on false evidence in violation of due process; (4) intimidation of and tampering with the testimony of Kouns; and (5) intimidation of defense alibi witness Sarah Krupansky.  (*Id.*, PageID #409–20.)

On December 3, 2019, the State trial court denied this second petition for post-conviction relief.  (*Id.*, PageID #467.)  Mr. Lawless appealed.  (*Id.*, PageID #468.)  On

appeal, Mr. Lawless raised six assignments of error, which included these issues and an assignment of error that the State trial court may not dismiss the petition without an evidentiary hearing.  (*Id.*, PageID #472.)  In the appendix to his brief, Mr. Lawless included four affidavits:  (1) Kim Gorbett (Kouns's mother); (2) Sarah Krupansky (Raymond Krupansky's sister); (3) Kouns; and (4) Olivia Boyer, the prosecutor at trial.  (*Id.*, PageID #497–505.)

In her affidavit, Gorbett alleges that her son, Michael Kouns, was "coerced and forced to testify" against Mr. Lawless.  (*Id.*, PageID #498.)  Sarah Krupansky states that she was unable to testify at Mr. Lawless' trial because she was threatened and coerced; however, if she had testified, "the truth would have led to an exoneration of Richard Lawless on all charges."  (*Id.*, PageID #500.)  She claims that Mr. Lawless was with her during the time of the alleged crimes, so he could not have kidnapped or assaulted Raymond Krupansky.  (*Id.*)  Kouns claims that "everything [he] testified to was because of a threat or promise from the state."  (*Id.*, PageID #502.)  And the affidavit from the prosecutor is the same one submitted earlier in response to the first post-conviction petition.  (*Id.*, PageID #503–05.)  An order from the State appellate court struck the affidavits for failure to comply with the court's rules.  (*Id.*, PageID #506.)

On July 1, 2020, the State appellate court affirmed the State trial court's denial of the petition and overruled all assignments of error.  (*Id.*, PageID #541-45.)  The State appellate court determined that Mr. Lawless had failed to explain why he could not procure these affidavits for more than two and a half years when he reasonably

7

should have been aware of "possible coercion by his co-defendant by January 2017 at the latest." (*Id.*, PageID #545.) It ruled that Mr. Lawless was not unavoidably prevented from discovering the facts upon which he based his successive post-conviction petition, and therefore, the State trial court had no authority to consider it. (*Id.*)

Subsequently, Mr. Lawless filed a notice of appeal to the Ohio Supreme Court on August 14, 2020. (*Id.*, PageID #547.) In his memorandum in support of jurisdiction, Mr. Lawless raised three propositions of law: (1) the State's failure to provide details of witness' incentive to testify violated *Brady*; (2) the State trial court erred by failing to hold an evidentiary hearing; and (3) "should a Defendant be time barred from filing post conviction when the prosecution discloses evidence it withheld for over one year after transcription of the proceedings?" (*Id.*, PageID #555.) On October 13, 2020, the Ohio Supreme Court declined to review. (*Id.*, PageID #588.)

### E.     Petition for a Writ of Habeas Corpus

On October 13, 2021, Mr. Lawless filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1, PageID #1.) In this petition, Mr. Lawless raised the following four grounds for relief: (1) his conviction was obtained in violation of the Confrontation Clause; (2) he received ineffective assistance of counsel; (3) the prosecutor offered incentives to testifying witnesses and lied to the court, jury, and defense; and (4) witnesses intimidation. (*Id.*, PageID #5.)

In a report and recommendation dated December 30, 2024, the Magistrate Judge recommended that the Court dismiss the petition as untimely filed. (ECF No. 12, PageID #1026.) Specifically, she determined that the habeas petition was

filed outside the one-year limitations period and that Petitioner failed to establish an entitlement to statutory tolling or equitable tolling.  (*Id.*, PageID #1015, #1016, & #1019.)  Nor did the Magistrate Judge find that an alternative date triggers the limitations period to begin to run.  (*Id.*, PageID #1024.)

Petitioner raised three objections to the report and recommendation.  (ECF No. 15.)  First, he objects to the determination that his petition was untimely.  (*Id.*, PageID #1034.)  Second, he objects that cause and prejudice excuse any procedural default on his part.  (*Id.*, PageID #1038.)  Third, he objects to the Magistrate Judge's report and recommendation that actual evidence fails to toll the limitations period. (*Id.*, PageID #1040.)

## STANDARD OF REVIEW

A district court judge may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court," 28 U.S.C. § 636(b)(1)(B), of a petition for a writ of habeas corpus, which the Court does by local rule, *see* Local Rule 72.2.  When reviewing a report and recommendation, if a party objects within the allotted time, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "Objections must be specific, not general" and should direct the Court's attention to a particular dispute.  *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Thomas v. Arn*, 474 U.S. 140, 147 (1985) ("The filing of objections

9

to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.").

Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Importantly, the Court's job is not to conduct a free-wheeling examination of the entire report and recommendation, but only to address any specific objections that a party has advanced to some identified portion of it. Accordingly, it is the Court's task in this matter to review the Magistrate Judge's report and recommendation de novo, based on the specific objections Petitioner raises.

## ANALYSIS

Where a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States," he is entitled to a writ of habeas corpus. 28 U.S.C. §§ 2241(c)(3) & 2254(a). To be entitled to habeas relief under AEDPA on a "claim that was adjudicated on the merits in State court proceedings," Petitioner must show that the State court decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d). At bottom, the writ tests the fundamental fairness of the State court proceedings resulting in the deprivation of the petitioner's liberty. *See, e.g.*, *Brown v. Allen*, 344 U.S. 443, 463 (1953); *Powell v. Collins*, 332 F.3d 376, 388 (6th Cir. 2003)

(citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000).

## I.  Timeliness

The Magistrate Judge determined that none of Petitioner's three post-conviction petitions tolled the statute of limitations for filing his habeas petition. (ECF No. 12, PageID #1016.)  Petitioner objects that he is entitled to equitable tolling because he alleges that evidence was withheld from him, constituting a *Brady* violation.  (ECF No. 15, PageID #1035.)  Specifically, Petitioner points to the Boyer affidavit from the prosecutor in State court, supplied on September 13, 2017, as "the evidence establishing this violation."  (*Id.*, PageID #1037.)

Petitioner argues that, "[w]hile the Magistrate is correct that the state trial court deemed the initial Post-Conviction Petition to be untimely, the state court was wrong" because when a "Post-Conviction Petition relies upon evidence that was actively withheld by the prosecutor, that is, where it constitutes the basis for a 'Brady' claim . . . the Petition is not untimely."  (ECF No. 15, PageID #1035.)

Under Section 2953.21(A)(2)(a) of the Ohio Revised Code, a petition for post-conviction relief "shall be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction."  Further, "a court may not entertain a petition filed after the expiration of [this period]," unless one of the exceptions under Sections 2953.23(A)(1) or 2953.23(A)(2) is available.  Ohio Rev. Code § 2953.23(A).  For the first exception to apply, the petitioner must satisfy two conditions, which read in relevant part:

11

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted.

Ohio Rev. Code § 2953.23(A)(1)(a)–(b).

The State appellate court observed that the trial transcripts were filed in Mr. Lawless's direct appeal on June 30, 2016, but that Mr. Lawless "did not file his petition for post-conviction relief until more than 365 days later on July 13, 2017." (ECF No. 6-1, PageID #375.)  Further, the court acknowledged that Mr. Lawless "did not argue that an exception under Section 2953.23 applied" in his petition and that "[t]he trial court, therefore, did not have jurisdiction to consider Mr. Lawless's untimely petition."  (*Id.*)

### I.A.  *Brady* Claim

In *State v. Bethel*, 2022-Ohio-783, 167 Ohio St. 3d 362, 192 N.E.3d 470, ¶ 25, the Ohio Supreme Court determined that, "when a defendant seeks to assert a *Brady* claim in an untimely or successive petition for postconviction relief, the defendant satisfies the 'unavoidably prevented' requirement contained in R.C. 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies."  *See also State v. Buehner*, 2018-Ohio-4432, ¶ 30 (Ohio Ct. App.) (determining

that the trial court erred when it denied the petitioner's motion for leave to file a motion for a new trial because the petitioner "was avoidably prevented from discovering the exculpatory evidence").

As the Magistrate Judge observed, *Bethel* does not shift the burden from Petitioner to satisfy the requirements of Section 2953.23(A)(1).  (ECF No. 12, PageID #1018.)  "[A] petitioner who files an untimely or successive petition for postconviction relief under R.C. 2953.21 bears the burden of showing that he was unavoidably prevented from discovering the evidence on which the petition relies."  *State v. Johnson*, 2024-Ohio-134, 173 Ohio St. 3d 592, 232 N.E.3d 786, ¶ 18.  A petitioner can establish this by either (1) "establishing a violation under *Brady*" or (2) "demonstrating that he was previously unaware of the evidence on which the petition relies and could not have discovered it by exercising reasonable diligence."  *Id.*

Petitioner provides no argument that he attempted to satisfy this burden. Instead, he claims that "the evidence establishing this violation consists of a sworn affidavit *from the prosecutor* involved who, while stating that no *explicit* promises were made, admits that the question had been raised which establishes that the witness clearly had expectations of severity if he did not testify as he thought the prosecutor would want."  (ECF No. 15, PageID #1037.)  But "[t]he light that an affidavit's date sheds on [the issue of the tolling exception] is dim, at best."  *Johnson*, 2024-Ohio-134, at ¶ 25.  "A date merely reveals when the affidavit was executed or provided, not when the testimony it contains became available."  *Id.*  This means that "the information essential to the R.C. 2953.23 inquiry remains cloaked in darkness."

*Id.* And "it is the petitioner's duty to present sufficient evidence to carry that burden at the time he files the petition." *Id.* at ¶ 26.

Further, Petitioner cites the significance of the prosecutor's affidavit as evidence that "the witness clearly had expectations of severity if he did not testify." (ECF No. 15, PageID #1037.) But the prosecutor's affidavit merely stated that Kouns informed her that "he was upset about his pending case in Ashland County and for his involvement with Richard Lawless" and that "he did not want to testify." (ECF No. 10-1, ¶ 4, PageID #971–72.) While the prosecutor stated that she "implored Mr. Kouns that the truth as to what happened was important," she "made clear that no offers or guarantees could be made by [herself] or [her] office, as [her office was] not involved in Mr. Kouns's Ashland County Case." (*Id.* (citation modified).)

### I.B.    Information Known to Petitioner

Petitioner relies on *Banks v. Dretke*, 540 U.S. 668, 695 (2004), for the unremarkable proposition that a defendant has no duty to "scavenge for hints of undisclosed *Brady* material." But any knowledge that Petitioner could have gained from this information would not change what he already knew about Kouns. Indeed, in his first post-conviction petition, Petitioner alleged that Kouns "was offered help in exchange for his testimony" based on a letter from Kouns dated September 8, 2016. (ECF No. 6-1, PageID #237, #243, & #263.)  "*Brady* is concerned only with cases in which the government possesses information which the defendant does not." *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000) (citation omitted).  No *Brady* violation exists if a defendant knew of should have known the essential facts permitting him to take advantage of the information in question, or if the information was available through

14

another source.  *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007).

Therefore, Petitioner was not "avoidably prevented from discovering . . . exculpatory

evidence."  *Buehner*, 2018-Ohio-4432, at ¶ 30.

Even assuming that this information was suppressed, the State trial record

shows this impeachment evidence would not have made a difference to the outcome

of the trial, making the evidence immaterial.  *See Jalowiec v. Bradshaw*, 657 F.3d

293, 307 (6th Cir. 2011), *as amended* (Nov. 23, 2011) (explaining that, to be material,

efforts to impeach a witness "would have been so significantly aided by the

statements as to create a reasonable probability that the outcome of the trial would

have been different").  Nor would this information have had impeachment value for

any of the witnesses, as was the case in *Kyles v. Whitley*, 514 U.S. 432, 450 (1995).

### I.C.  Subsequent Petition

Petitioner briefly mentions his second petition, arguing that the Magistrate

Judge "erroneously afford[ed] a presumption of correctness that is overcome by record

evidence," and "fails to apply the correct legal principles established by the Supreme

Court with regards to Brady material and the AEDPA limitations period."  (ECF No.

15, PageID #1037.)  Because the record undermines Petitioner's claim for tolling

based on his claimed *Brady* violation with respect to his first petition, *a fortiori* his

arguments based on his second petition also fails.

For the reasons already stated for Petitioner's first post-conviction petition, the

record evidence does not contradict the State court's denial of these petitions.

Petitioner's conclusory statement that the Magistrate Judge failed to "apply the

correct legal principles" regarding the limitations period for a federal habeas claim

without any further argument does not withstand scrutiny.  Although the pleadings and documents *pro se* litigants file are liberally construed and held to less stringent standards than the formal pleadings of lawyers, *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  As the Magistrate Judge correctly observed, "[t]he tolling provision does not . . . 'revive' the limitations period . . . it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (citation omitted).

*     *     *

Accordingly, the Court **OVERRULES** Petitioner's objection to the report and recommendation that the Magistrate Judge erred in determining that the petition was untimely filed because his State post-conviction filings did not toll or pause the statute of limitations under Section 2244(d)(1)(A).

## II.    Cause and Prejudice to Excuse Procedural Default

In his second objection, Petitioner claims that "a state-created impediment interfered with [his] ability to properly present his issues in the collateral pleadings necessary to fully exhaust state remedies" because "the state courts refused to provide the necessary transcripts from the Ashland County proceedings that serve to establish the fact that deals were made and withheld from the defense, despite repeated request[s] for the evidence, which demonstrate Petitioner's due diligence requirement."  (ECF No. 15, PageID #1038.)

Petitioner cites *Greene v. Brigano*, 123 F.3d 917, 921 (6th Cir. 1997), to argue that "the denial of a transcript to an indigent defendant constitutes an independent

16

due process violation." (*Id.*, PageID #1038.)  But *Greene* concerned a petitioner's request for his own trial transcript, which the Sixth Circuit noted was a "source of factual information specific to the defendant's case and necessary in the preparation of an appeal." *Id.* at 922.  This case does not speak to a petitioner's efforts to obtain a transcript for entirely separate proceedings in another court and county, particularly where, as noted, Mr. Lawless already had sufficient knowledge to allege that Kouns was offered help in his case in Ashland County in exchange for his testimony again him.

"In general . . . there is no constitutional right to discovery in criminal cases." *United States v. Cook*, 3 F. App'x 449, 451 (6th Cir. 2001) (citing *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)).  Petitioner "does not enjoy an unfettered right to a transcript at government expense to assist him in the preparation of a collateral attack on the conviction." *Id.* (citing *United States v. MacCollom*, 426 U.S. 317, 323–24 (1976)).

Petitioner attempts to rebut the Magistrate Judge's determination that he "offers no clear explanation as to why he waited over four years—until October 13, 2021—to seek federal habeas relief based on the information he reportedly learned from [the affidavit of Ms. Boyer] and the affidavits of Ms. Gorbett and Ms. Krupansky." (ECF No. 12, PageID #1020–21.)  Petitioner claims that this observation is a "logical fallacy" because it "completely overlooks the fact that that period of time referenced was the period of time in which Petitioner [was] litigating in the state court to ensure full exhaustion of state remedies required for federal

habeas review."  (ECF No. 15, PageID #1039.)  The statute of limitations for bringing a habeas claim in federal court began to run on August 22, 2018.  (ECF No. 12, PageID #1015.)  And the record fails to establish that Petitioner was prevented from seeking federal habeas relief before October 13, 2021.  Therefore, Petitioner's delay was not "beyond the control of the litigant and unavoidable with reasonable diligence."  *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012) (citing *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011)).

Further, Petitioner submitted his petition in 2021 without the transcripts he claimed that he needed and could not file his petition without.  "The fact that [the petitioner] was able to file his . . . motion . . . while the alleged impediment still existed . . . suggests that [the petitioner] was not prevented . . . from timely filing his habeas petition."  *Winkfield v. Bagley*, 66 F. App'x 578, 583 (6th Cir. 2003) (explaining that the petitioner failed to allege facts that established that he was so inhibited by the State's action that he was unable to file and state a legal cause of action before the limitations period expired).  Accordingly, the Court **OVERRULES** Petitioner's second objection.

## III.    Actual Innocence

Finally, Petitioner argues that "the Magistrate's argument that evidence of an alibi, suppressed by improper actions of the government, cannot be considered as evidence to support an actual innocence claim is clearly erroneous."  (ECF No. 15, PageID #1041.)  He claims that the Krupansky affidavit demonstrated that she was "intimidated into not testifying by intimidation by the prosecutor" and "provide[d] an

18

ironclad alibi for Petitioner's whereabouts at the time the purported offenses were alleged to have occurred." (*Id.*, PageID #1040.)

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24 (1998) (citation omitted).  Credibly proving actual innocence requires a petitioner to support his allegations with "new reliable evidence . . . that was not presented at trial." *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).  District courts must determine that "in light of the new evidence, no juror, acting reasonably, would have voted to find [the petitioner] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329.  The evidence presented must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id*. at 316.

Krupansky claimed in her affidavit that she "was unable to testify at the trial of Richard Lawless for Richard Lawless's defense due to the threat, intimidation, and coercion to prevent [her] from doing so," including that she "was threatened to have [her] plea agreement withdrawn in the Ashland County Court of Common Pleas and also threatened to have additional charges filed against [her] in Medina County." (ECF No. 6-1, PageID #500.)  However, as the Magistrate Judge observed, Mr. Lawless called Krupansky to testify at trial, but she asserted her Fifth

Amendment privilege against self-incrimination.  (*Id.*, PageID #309; ECF No. 12, PageID #1023.)  Also, Petitioner possessed Krupansky's affidavit when he filed his first post-conviction petition in 2017.  (ECF No. 12, PageID #1023.)  The State trial court determined that "the affidavit of Sara Krupansky lacks credibility" because her "affidavit, now claiming coercion, does not overcome her actual recorded action of her asserting her Fifth Amendment privilege on the advice and in the presence of counsel at trial." (ECF No. 6-1, PageID #309.)  Although Petitioner cites *Bigelow v. Williams*, 367 F.3d 562, 575 (6th Cir. 2007), for the proposition that "an alibi constitutes evidence of innocence" (ECF No. 15, PageID #1041–42), courts refuse to open the innocence gateway where, as here, the proffered evidence is less reliable.  *Davis v. Bradshaw*, 900 F.3d 315, 327 (6th Cir. 2018).

Petitioner cites *Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024), to claim that "he did not factually commit the crime." (ECF No. 15, PageID #1040.)  To support this claim, he argues that the Krupansky affidavit "provides an ironclad alibi for Petitioner's whereabouts at the time the purported offenses were alleged to have occurred."  (*Id.*)  But alibi offered in Krupansky's affidavit comes from his girlfriend and contradicts testimony provided by the victim and Petitioner's co-defendant at trial.  *See, e.g.*, *State v. Lawless*, 2018-Ohio-444, ¶ 32 (Ohio Ct. App.).  Krupansky had the opportunity to testify at trial and declined to do so.  The Court shares the determination of the Magistrate Judge that, based on the record, including the testimony at trial, it cannot conclude that "no reasonable juror would find [Mr. Lawless] guilty."  *Hubbard*, 98 F.4th at 743.

Therefore, the Court **OVERRULES** Petitioner's objection to the Magistrate Judge's determination that there is no evidence for an actual innocence argument.

## CERTIFICATE OF APPEALABILITY

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding.  28 U.S.C. § 2253(c)(1).  Issuance of a certificate of appealability requires a petitioner to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This means that the petitioner must show that reasonable jurists could find the district court's determination of the relevant constitutional claims debatable or incorrect.  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004).  The petitioner need not show that the appeal would succeed to be eligible for a certificate of appealability.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Where, as here, "a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist [cannot] conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further . . . no appeal is warranted."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   Because no reasonable jurist could fairly debate the determination that the petition is untimely, the Court **DENIES** a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Petitioner's objections, (ECF No. 15), **ADOPTS** the Magistrate Judge's report and recommendation (ECF

No. 12), and **DENIES AND DISMISSES** the petition (ECF No. 1).  Further, the Court **DENIES** a certificate of appealability.

      **SO ORDERED.**

Dated:  August 29, 2025

_J. Philip Calabrese_
_United States District Judge_
_Northern District of Ohio_
